1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE, <br><br> Plaintiff, <br><br> v. <br><br> RAINIER PETROLEUM CORPORATION, <br><br> Defendants. | Case No. C14-831RSM <br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I.      INTRODUCTION

This matter comes before the Court on Plaintiff Puget Soundkeeper Alliance ("Soundkeeper")'s Motion for Partial Summary Judgment, Dkt. #15. Soundkeeper argues that Defendant Rainier Petroleum Corporation ("Rainier") has violated the Clean Water Act ("CWA") by violating certain terms and conditions of National Pollutant Discharge Elimination System ("NPDES") General Permits. Specifically, Soundkeeper accuses Rainier of exceeding benchmarks for zinc and copper in the stormwater discharge at its Facility in Seattle, failing to submit annual reports for 2013 and 2014, failing to monitor discharges from the Facility in seventeen quarters from the past six years, failing to monitor discharge from three of the four discharge points at its Facility, failing to conduct and document monthly inspections for permit compliance, failing to complete Level 1 Corrective Action when

required, contributing to violations of water quality standards in the Duwamish Waterway, and having several deficiencies in its Stormwater Pollution Prevention Plan ("SWPPP").  *See id.*  Rainier opposes this motion in part, arguing that the facts, taken in a light most favorable to Rainier as the non-moving party, do not support summary judgment.  Dkt. #23.  Rainier does, however, concede liability as to certain issues.  *See id.*  Soundkeeper's Motion is partial in nature; Plaintiff deliberately omits certain claims and the determination of any remedy.  *See* Dkt. #15 at 2.[1]   Having reviewed the parties' briefing, and having determined that oral argument is not necessary, the Court agrees with Plaintiff in part, and GRANTS IN PART their Motion as detailed below.

## II.      BACKGROUND

### A.  The Rainier Facility

Rainier operates a 1.53-acre marine fueling, service, and storage facility located on Colorado Avenue and South Spokane Street in Seattle, Washington (the "Facility").  Dkt. #4 at 2, Dkt. #9-1 at 1.  At the Facility, Rainier "engage[s] in industrial activity, including storage and distribution of lubricating oil."  Dkt. #1 at ¶30; Dkt. #4 at ¶30.  The Facility "includes two warehouses with indoor bulk petroleum tanks, a covered loading dock, three bulk storage areas and three rail sidings."  Dkt. #9-1 at 1.  "The area between the two warehouses [and in front of one of them] is completely paved…. [with] four storm drains."  Dkt. #25-1 at 8.  The Facility has a Storm Drainage System made up of four catch basins which tie into an eight inch discharge on the south side of the property…. [which] ultimately drains to the Duwamish East Waterway."  Dkt. #9-1 at 19; *see also* Dkt. #25-1 at 10.

### B.  Rainier's NPDES Permits and 2010 SWPPP

---

[1] As such, any attempt by Defendant in its Response to circumscribe Plaintiff's remedies, *e.g.* characterizing its violations as administrative in nature, *see* Dkt. #23 at 17, is not properly before the Court at this time.

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 2

Pursuant to the Clean Water Act, explained in greater detail below, the Washington State Department of Ecology ("Ecology") granted Rainier coverage under the General Permits[2] for this Facility under NPDES Permit Number WAR005619.  Dkt. #1, ¶ 29; Dkt. #4, ¶ 29.  On May 17, 2010, Rainier submitted a Stormwater Pollution Prevention Plan ("SWPPP") to Ecology pursuant to Permit requirements.  *See* Dkt. #25-1.  Rainier's SWPPP includes a Facility description, general location map, site map, description of Rainier's "Stormwater Pollution Prevention Team," description of the Facility's industrial activity and associated pollutants, areas on site where potential spills or leaks could occur, various "Best Management Practices" for reducing or containing stormwater pollution, a sampling plan, and "Worksheets for Development of the SWPPP."  *Id.* at 2.  The SWPPP states that the Facility's "Regular Business Hours" are "24 hours per day, 7 days per week, 365 days per year." *Id.* at 8.  The SWPPP contains a "Certification Form" which was signed by Daniel C. Kovacich, vice president, on July 12, 2010. *Id.* at 46.

### III.   DISCUSSION

#### A.  Legal Standard on Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).   Material facts are those which might affect the outcome of the suit under governing law.  *Anderson,* 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco,*

---

[2] Ecology regulates industrial discharges of stormwater through "general permits," which cover a large number of similar dischargers under a single NPDES permit. Dkt. #19-2 at 9; *See also* Envtl. Def. Ctr., Inc. v. EPA, 344 F.3d 832, 853 (9th Cir. 2003).  Three iterations of Ecology's Industrial Stormwater General Permit are of relevance to Soundkeeper's Motion—the "2002 General Permit" in effect from 2002 through 2009, the "2010 General Permit" that took effect on January 1, 2010, and the "2015 General Permit" that took effect January 2, 2015.  Dkt. #15 at 4.

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 3

1   *Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny &*

2   *Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

3        A factual dispute is "genuine" if the evidence is such that reasonable persons could

4   disagree about whether the facts claimed by the moving party are true.  *Aydin Corp. v. Loral*

5   *Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).  "[T]he issue of material fact required . . . to be

6   present to entitle a party to proceed to trial is not required to be resolved conclusively in favor

7   of the party asserting its existence; rather, all that is required is that sufficient evidence

8   supporting the claimed factual dispute be shown to require a jury or judge to resolve the

9   parties' differing versions of the truth at trial."  *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391

10  U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968).  However, the "party opposing

11  summary judgment must direct [the court's] attention to specific, triable facts," *S. Cal. Gas Co.*

12  *v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003), and the reviewing court is "not

13  required to comb through the record to find some reason to deny a motion for summary

14  judgment," *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001)

15  (quoting *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). The Court

16  must nevertheless draw all reasonable inferences in favor of the non-moving party.  *See*

17  *O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).

18  **B.  Clean Water Act Background**

19       The Clean Water Act, 33 U.S.C. §§ 1251-1376, aims to restore and maintain the

20  "chemical, physical and biological integrity of [the] Nation's waters."  33 U.S.C. § 1251(a).  To

21  achieve these desirable goals, the Act "establishes a comprehensive statutory system for

22  controlling water pollution."  *Ass'n to Protect Hammersley v. Taylor Res.*, 299 F.3d 1007, 1009

23  (9th Cir. 2002) (citing *Nat'l Wildlife Fed'n v. Consumers Power Co.*, 862 F.2d 580, 582 (6th

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 4

Cir. 1988)). This system includes the use of National Pollutant Discharge Elimination System ("NPDES") permits "for regulating discharges of pollutants into waters of the United States." *Id*.

Under the Clean Water Act, the "discharge of any pollutant" from a "point source" into navigable waters of the United States is unlawful unless the discharge is made according to the terms of an NPDES Permit obtained from either the United States Environmental Protection Agency ("EPA") or from an authorized state agency. *Ass'n to Protect Hammersley*, 299 F.3d at 1009 (citing 33 U.S.C. §§ 1311(a), 1342; *Comm. to Save Mokelumne River v. E. Bay Mun. Util. Dist.*, 13 F.3d 305, 308 (9th Cir. 1993)). In Washington State, the Department of Ecology ("Ecology") is authorized by the EPA to administer the Clean Water Act's NPDES program. *Ass'n to Protect Hammersley*, 299 F.3d at 1009-10.

The Clean Water Act explicitly allows private citizens to bring enforcement actions against any person alleged to be in violation of federal pollution control requirements. *Id.* at 1012 (citing 33 U.S.C. § 1365(a)(1); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 174-75, 145 L. Ed. 2d 610, 120 S. Ct. 693 (2000)). This right of private suit is subject to express procedural prerequisites: At least sixty days before filing a suit, the prospective citizen plaintiff must provide notice of the alleged violation to the EPA, the State where the alleged violation occurs, and the alleged violator. *Id.* (citing 33 U.S.C. § 1365(a)(1)).

**C. Standing**

Despite conceding that summary judgment is warranted as to certain of Soundkeeper's claims, Rainier in its Response, appears to challenge Soundkeeper's standing to bring this lawsuit. *See* Dkt. #23 at 18-23. However, as Soundkeeper correctly notes on Reply, "while [Rainier] takes issue with two of Soundkeeper's three standing declarants, Rainier has not

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 5

disputed Mr. Lee Moyer's standing.   An organization has standing to sue on behalf of its membership if it has 'at least one member with standing' in his own right."   Dkt. #27 at 11 (quoting *Food & Commercial Workers v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996) and citing *Rumsfeld v. Forum for Academic & Instit. Rights, Inc.*, 547 U.S. 47 n.2, 126 S. Ct. 1297 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."); *Bd. of Natural Res. of the State of Wash. v. Brown*, 992 F.2d 937, 942 (9th Cir. 1993) ("If any of these [plaintiffs] has standing, we may reach the merits without considering whether the other two also have standing.")).   Soundkeeper also argues that it has "standing in its own right," citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982). This again is not disputed by Rainier.   Although it is not clear if this issue is even properly before the Court, Soundkeeper has adequately shown that it does have standing to bring this lawsuit.   The Court need not address Rainier's other arguments about opinion and hearsay testimony to rule on this Motion.

### D.  Notice

Under the Clean Water Act, "No action may be commenced… prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator [of the Environmental Protection Agency], (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation or order…" 33 U.S.C. §1365(b)(1).

Rainier argues that Soundkeeper failed to comply with the CWA's notice requirement as to this claim because notice that Rainier discharged stormwater with elevated levels of zinc and copper "each and every day during the last five years on which there was 0.1 inch or more of precipitation," along with a chart of precipitation for the area, was insufficient notice. Dkt. #23 at 9.   Rainier argues that "the notice must specify the non-compliance and date(s) of the

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 6

violation," citing *Washington Trout v. McCain Foods*, 45 F.3d 1351, 1352 (9th Cir. 1995).  In Reply, Soundkeeper points to *Waterkeepers N. Cal. v. AG Industrial Mfg., Inc.*, 375 F.3d 913, 917-18 (9th Cir. 2004) where the Ninth Circuit held that notice alleging the defendant violated the CWA by discharging contaminated storm water "during at least every rain event over 0.1 inches" was "sufficiently specific to inform [AG Industrial] about what it is doing wrong." *Waterkeepers* went on to hold that CWA plaintiffs are "not required to include any rain tables," listing such dates, and a notice letter that does "provide notice of several exact dates of alleged discharge violations" is adequate.  *Id.* at 918.  The Court finds *Waterkeepers* to be on point, and Soundkeeper's argument the more persuasive.  Soundkeeper's notice of sampling and reporting violations was sufficient.

**E.  Violations of Rainier's NPDES General Permits**

> **a.  Exceeding Benchmarks for Zinc and Copper in Stormwater Discharge**

Soundkeeper alleges that Rainier has exceeded allowable discharges of zinc and copper pollutants, as explained by Plaintiff's expert Richard R. Horner, Ph.D:

> 14.   The Permits under which Rainier Petroleum has operated since 2005 set a benchmark concentration for zinc in stormwater discharges at117 μg/L. The facility exceeded the benchmark in six of the 14 samples analyzed from the first quarter of 2005 through the fourth quarter of 2014, with a maximum concentration of 302 μg/L in the second quarter of 2012. Zinc concentrations in these six samples were substantially higher than the zinc water quality criteria for the Lower Duwamish River, which are 90 μg/L (acute) and 81 μg/L (chronic), and even more elevated above the average ambient zinc concentration measured in the river, 2.94 μg/L.
>
> 15.   The Permits under which Rainier Petroleum has operated since 2010 set a benchmark concentration for copper in stormwater discharges at14 μg/L. The firm has analyzed copper in only three samples under these permits, two of which exceeded the benchmark. Copper concentrations in the two samples were substantially higher than the copper water quality criteria for the Lower Duwamish River, which are 4.8 μg/L (acute) and 3.1 μg/L

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 7

(chronic), and even more elevated above the average ambient copper concentration measured in the river, 0.810 µg/L.

Dkt. #18 at 6.  The source of this zinc and copper is believed to be from the tires and brake pads used by trucks on the Facility.[3]   The specific quarters where Rainier's discharge exceeded benchmarks for zinc and copper are listed in Table 1 in Soundkeeper's Motion.  *See* Dkt. #15 at 10.  This Table indicates that Rainier exceeded the benchmark for Zinc in the 4th Quarter of 2009 and 2nd Quarter of 2012, and exceeded the benchmark for Copper in the 2nd Quarter of 2012, 3rd Quarter of 2013, and 1st Quarter of 2015.  *Id.*

Rainier admits and acknowledges that it discharged excess zinc and copper during the 4th Quarter of 2009, 2nd Quarter of 2012, and 3rd Quarter of 2013, and states that it "is willing to pay a penalty for these violations."  Dkt. #23 at 11.  Rainier's does not mention the excess reading of zinc from the 1st Quarter of 2015.

The Court finds that Rainier exceeded the benchmark for Zinc in the 4th Quarter of 2009 and 2nd Quarter of 2012, and exceeded the benchmark for Copper in the 2nd Quarter of 2012, 3rd Quarter of 2013, and 1st Quarter of 2015.  These discharges have led to certain violations of the General Permits below.

### b.  Annual Reporting Failures

Rainier admits and acknowledges that Soundkeeper "is entitled to summary judgment" on its failure to submit annual reports for 2013 and 2014.  Dkt. #23 at 10.

### c.  Failures to Sample and Report Stormwater Discharges

---

[3]  In response to this lawsuit, Rainier commissioned a report by Harbor Consulting Engineers, Inc. ("Harbor Consulting") to examine potential stormwater pollutants at the Facility.  *See* Dkt. #9-1.  According to this report, "[i]t was indicated in the Annual Report that the contamination was most likely originating from the tires and brake pads of the numerous trucks that enter the site.  Harbor concurs with this assessment…" *Id.* at 3.

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 8

Soundkeeper alleges that Rainier failed to collect stormwater samples and report these samples to Ecology as required under the NPDES General Permits.[4]   Dkt. #15 at 12.   According to the report Rainier had commissioned by Harbor Consulting, "Rainier has not historically collected and analyzed stormwater samples during every calendar quarter as required under the [NPDES] Permit.   Instead it appears that samples have only been collected if there was stormwater discharged on the day when sampling was scheduled. As a result, the stormwater sampling record is incomplete over the last several years…"   Dkt. #9-1 at 3.   According to Soundkeeper's expert Dr. Horner, Rainier failed to report in the following quarters: "one in 2005; two each in 2006, 2007, 2008, and 2009; all four quarters in both 2010 and 2011; three each in 2012, 2013, and 2014; and at least the first quarter of 2015."   *Id.* at 5.

Rainier appears to concede that it did fail to sample in most of these quarters.   *Se* Dkt. #23 at 6.   However, Rainier argues that During the 3rd Quarter of 2011 and 3rd Quarter 2012, Rainier submitted Discharge Monitoring Reports that state no sample was collected because no stormwater was discharged during normal working hours due to no rain falling during either quarter.   Dkt. #23 at 6.   Rainier's argument has two components: a question of fact exists as to whether it rained sufficiently during those quarters, and a question of fact exists as to whether that rain fell during the Facility's normal business hours.   The Court will address each in turn.

### 1. Measurable Rainfall

Plaintiff's expert Dr. Horner opines that "any precipitation event larger than 0.10 inch in 24 hours is very likely to produce a stormwater runoff discharge."   Dkt. #18 at 5.   Dr. Horner bases this belief on his "knowledge of stormwater hydrology" and "documented evidence… for the Rainier Petroleum site, on the basis of sufficient runoff occurring to take a sample on either

---

[4] *See* Conditions S4 and S5 in the 2002 General Permit, Dkt. #19-2 at 26-28, 39; Conditions S4 and S9 in the 2010 General Permit, Dkt. #19-3 at 22, 38; and Conditions S4 and S9 in the 2015 General Permit, Dkt. #19-4 at 25, 45.

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 9

May 24 or 25, 2012, when, respectively, 0.01 and 0.04 inch of rain fell." *Id.* Rainier responds by arguing that "[t]here is no evidence establishing that 0.1 inch was sufficient to create a discharge." Dkt. #23 at 7. Later, Rainier argues that "the evidence, viewed in the light most favorable to Rainier, suggests an excess discharge does not always occur with 0.1-inch of rain," and cites to "Kovacich Decl. ¶6," which states simply "Attached hereto as **Attachment D** are true and correct copies of Rainier's Discharge Monitoring Reports from 2010 to present." Dkt. #23 at 9; Dkt. #25 at 2.

The Court is not required to comb through 40 pages of discharge monitoring reports to find evidence that contradicts Soundkeeper's argument. *See Carmen*, 237 F.3d at 1029. The "party opposing summary judgment must direct [the court's] attention to specific, triable facts," *S. Cal. Gas Co.*, 336 F.3d at 889. Rainier has failed to meet this summary judgment standard. The Court thus finds no genuine issue of material fact as to this issue and concludes that any precipitation event larger than 0.1 inch is sufficient for taking a sample.

### 2. The Facility's Regular Business Hours

Plaintiff alleges that the Facility is operated 24 hours per day, 7 days per week, 365 days per year, pointing to Rainier's own explicit language in its SWPPP. *See* Dkt. #25-1 at 8. Defendant acknowledges that this is what its SWPPP states, but responds by arguing that the Facility is actually only "staffed and operational" from "7:00 AM to 3:30 PM Monday through Friday." Dkt. #25 at 2. Rainier "acknowledges revisions are needed to its SWPPP, including an update of its Facility hours." Dkt. #23 at 7. Rainier raises this issue to argue that "per the plain language of the Permit, Rainier cannot be required to sample discharges outside normal business hours or when its Facility is not active or staffed." *Id.*

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 10

The Court notes the audacity of Rainier listing its "Regular Business Hours" as continuous, *i.e.* 168 hours per week, in its 2010 SWPPP filing with Ecology, then simply stating in a declaration, filed in the heat of litigation on the very issues the SWPPP was meant to address, that its business hours are actually limited to 42.5 hours per week.  However, for the purposes of this summary judgment Motion, the Court must take Rainier's newly declared assertion of its business hours as sufficient to establish a question of fact absent any evidence that this declared statement is false.

In sum, summary judgment on Soundkeeper's claim that Rainier violated the NPDES General Permits by failing to sample stormwater discharge is appropriate for all claimed quarters except the 3rd Quarter of 2011 and 3rd Quarter 2012 because a question of fact exists as to whether it rained more than 0.1 inch during the Facility's normal business hours at any point in those quarters.

### d.  Failure to Sample from 3 out of 4 Discharge Points

Soundkeeper alleges that even when Rainier sampled stormwater, it did so at only one discharge point when the Facility has four discharge points.  Dkt. #15 at 13.  Rainier does not dispute this fact, arguing instead that its sampling is otherwise sufficient under the permit.  However, the 2010 and 2015 General Permits require Rainier to sample each point of discharge unless the SWPPP adequately justifies that non-sampled discharges are "substantially identical" to those that are sampled.  Dkt. #19-3 at 21-23; Dkt. #19-4 at 24-25.  Rainier concedes that its SWPPP does not include the language "substantially similar" and agrees that it needs to revise its SWPPP.  Dkt. #23 at 6.  Rainier thus concedes that its sampling of only one of its discharge points prior to this lawsuit was not justified under its SWPPP, even if the sampling could be justified under a properly drafted SWPPP.  Summary judgment as to this claim is appropriate.

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 11

**e.   Failure to Conduct Monthly Inspections**

Soundkeeper alleges that Rainier has failed to conduct monthly inspections as required under the 2010 and 2015 General Permits.  Dkt. #15 at 14-15 (citing Dkt. #19-3 at 34; Dkt. #19-4 at 41).   As evidence for the failure to conduct these inspections, Soundkeeper cites to Rainier's own consultant report and Rainier's failure to produce these reports in response to discovery requests.  Dkt. #9-1 at 4 (Harbor Consulting Report stating "Monthly Inspection Reports were not available"); Dkt. #19 at 4; Dkt. #19-11 at 10-11, 14-15 (discovery requesting "all inspection reports").

In Response, Rainier attempts to dodge the issue by arguing "While Rainier may not have prepared a formal inspection report that is up to [Soundkeeper's] standards, this is not the same as Rainier failing to inspect its Facility."  Dkt. #23 at 10.   Rainier cites to monthly inspection reports for 2014 and 2015.  Dkt. ##25-7; 25-8.  These reports appear to conform to requirements of the General Permits, but contain certain procedural errors, *e.g.* the signer of each report fails to check the box certifying "[t]he facility is in compliance with the terms and conditions of the SWPPP and the Industrial Stormwater General Permit."  *See id.* Rainier does not provide any monthly inspection reports for 2010 through 2013.

Soundkeeper argues that these monthly inspection reports were never produced in discovery and moves to strike under Rule 37 (c)(1).  Having examined Soundkeeper's discovery requests and the Harbor Consulting report, the Court finds that the failure to disclose these reports in discovery cannot be substantially justified given the clear language of Soundkeeper's discovery requests and cannot be deemed harmless because the disclosure comes after Plaintiff has filed this Motion and after the close of discovery.  Soundkeeper's failure to supplement its earlier discovery response with these reports is inexcusable given the comment from the Harbor

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 12

Consulting Report that monthly inspection reports were not available.  Even if the Court were to consider this evidence, the Court would still find that Rainier's failure to certify each and every monthly report would constitute a violation of the General Permits.  Dkt. #19-3 at 35; Dkt. #19-4 at 41-42 ("The Permitttee shall ensure each inspection report… includes… Certification and signature…").  The Court finds that Rainier has violated the NPDES General Permits by failing to conduct and properly document monthly inspections of the Facility.

### f.   Failure to Conduct Level 1 Corrective Actions

Soundkeeper alleges that Rainier failed to conduct "five Level 1 Corrective Actions" when it sampled discharge and the sample exceeded benchmarks under the NPDES General Permits.  Dkt. #15 at 15-16.  These specific samples were in the 4th Quarter of 2009, the 2nd Quarter of 2012, the 3rd Quarter of 2013, and the 1st Quarter of 2015.  *Id.* at 16-18.  Rainier does not dispute that it failed to initiate Level 1 Corrective Action in 2009.  Dkt. #23 at 1.  Summary judgment is appropriate for this violation.  The parties appear to acknowledge that Rainier took some corrective action in 2012 by conducting vacuum sweeping, but Rainier acknowledges that it failed to revise its SWPPP as required by the General Permit under Condition S8.B.1.c.  *Id.* at 11; Dkt. #19-3 at 36.  Rainier does not dispute that it failed to initiate Level 1 Corrective Action in 2013.  Dkt. #23 at 11.  Summary judgment is appropriate for this violation.  The parties appear to acknowledge that Rainier took some corrective action in 2015 by increasing the frequency of its Facility sweeping, but Rainier fails to mention revising its SWPPP as required by the General Permit under Condition S8.B.1.c.  *Id.* at 11; Dkt. #19-3 at 36.  Summary judgment is appropriate for this violation.

### g.   Violating Water Quality Standards for the Duwamish Waterway

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 13

Soundkeeper alleges that Rainier's discharge contributed to a violation of the surface water quality standards or sediment management standards for the Duwamish waterway in violation of the NPDES General Permits.  Dkt. #15 at 19 (citing Condition S7 from Dkt. #19-2 at 43,  and Conditions S3.A.1-2.b, and S10 from Dkt. #19-3 at 14, 41-42 and from Dkt. #19-4 at 16, 49).  In support of this claim, Soundkeeper reiterates the now established fact that Rainier exceeded its zinc and copper benchmarks in stormwater discharge, and argues that the zinc and copper concentrations in these discharges were substantially higher than the surface water quality standards for these toxic metals, citing to their expert Dr. Horner.  Dkt. #15 at 19.  Dr. Horner further declares that discharging copper and zinc can negatively affect the receiving water environment "through their toxic effects on aquatic life" and can accumulate in the receiving water sediments and that in his expert opinion "Rainier Petroleum's stormwater discharges have contributed to the elevated sediment metal concentrations responsible for these listings." Dkt. #18 at 7-8.

In Response, Rainier argues that it is not disputing that it exceeded benchmarks for zinc and copper, but disputes the extent to which its discharges could have affected the waterways in question.  *See* Dkt. #23 at 11-13.   The Court finds that Rainier has technically violated provisions S3, S7, and S10 of the applicable General Permits cited by Soundkeeper.  The issue of the extent or effect of these violations is not before the Court and remains for trial.

### h.  Deficiencies in Rainier's SWPPP

#### 1. Site Map

Soundkeeper alleges that Rainier's SWPPP is deficient because its site map fails to identify: drainage areas for each discharge point, each sampling location by unique identifying number, the areas of pollutant contact associated with specific industrial activities, and surface

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

water locations.  Dkt. #15 at 21.  Rainier largely ignores these criticisms, instead pointing to several places in its SWPPP where storm drains are mentioned, and highlighting Appendix A ("Schematic Flow Drawing") where catch basins are labeled as well as their drainage flow and "their intersection with the King County Mainline, Combined Mainline, Sanitary Mainline, and Drainage Mainline." Dkt. #23 at 5.

The NPDES General Permits contain specific requirements for the SWPPP site map. *See, e.g.,* Dkt. #24-1 at 14.  The site map "shall" identify, *inter alia*: all stormwater drainage and discharge structures, the stormwater drainage areas for each stormwater discharge point off-site with a unique identifying number for each, each sampling location by unique identifying number, paved areas and buildings, areas of pollutant contact (actual or potential) associated with specific industrial activities, surface water locations, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes. *Id.* at 14-15.  If this was not clear enough, the instructions listed in the SWPPP form used by Rainier clearly state "[i]dentify all points of discharge to surface water, storm sewers…. Identify each sampling location by its unique identifying number such as A1, A2, etc. Include these sampling locations on site map." Dkt. #25-1 at 22.  Although Rainier has provided some of the required information in an additional Schematic Flow Drawing of its catch basins, there can be no dispute that the site map it submitted with its SWPPP technically fails to identify drainage areas for each discharge point, each sampling location by unique identifying number, the areas of pollutant contact associated with specific industrial activities, and surface water locations as required under the NPDES General Permits.  *See* Dkt. #25-1 at 29-30.  The Court finds that Rainier's site map is in violation of the General Permits.

**2. Sampling Plan**

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 15

Soundkeeper alleges that the SWPPP is deficient because its sampling plan fails to identify three of the Facility's four discharge locations as sampling points and fails to include documentation as to why each discharge point is not sampled.  Dkt. #15 at 21.  Indeed, although the SWPPP clearly indicates that the Facility has four storm drains, Dkt. #25-1 at 8, and four catch basins, *id.* at 10, the SWPPP's sampling plan has a table of "Discharge Locations" with only one discharge location listed, *id.* at 22.  The instructions clearly state "[i]dentify all points of discharge to surface water, storm sewers…"  *Id.*  Rainier's single discharge location is identified as "Northeast Catch Basin…. Storm drain outside Spokane St. warehouse."  *Id.* Rainier's SWPPP fails to include documentation as to why each discharge point is not sampled. The Court finds that Rainier's sampling plan is in violation of the General Permits.

### 3. Employee Training Plan

Soundkeeper alleges that the SWPPP is deficient because it fails to contain an employee training plan that includes (1) an overview of the SWPPP and how employees make a difference in complying with the SWPPP and preventing stormwater contamination and (2) an annual log of the dates on which specific employees received the training.  *Id.* at 21-22.  These are required under the General Permit.  *See* Dkt. #19-3 at 19.  In Response, Rainier argues that its SWPPP does include a section describing employee training and stating that a record of employee training is kept in individual employees' personnel files.  Dkt. #23 at 16.  Rainier further argues that the employee records are incorporated by reference into its SWPPP.  *Id.*

The Court finds that the employee training plan found in Rainier's SWPPP fails to conform to the requirements of the General Permits by failing to cover an overview of the SWPPP and how employees make a difference in complying with the SWPPP.  The fact that Rainier's employee personnel files may effectively "log" the training at issue creates a question

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 16

of fact as to whether Rainier's failure to include a single log in the SWPPP constitutes a violation.

### 4. Signature

Soundkeeper alleges that the SWPPP is deficient because "it was not signed and certified as the General Permit required at the time Soundkeeper filed suit."  Dkt. # 15 at 22. Soundkeeper offers no further explanation of this allegation in its Motion, except to cite to its Request for Admission No. 40, which reads, "Admit that as of June 6, 2014, your most recent SWPPP for the site was not signed and certified in accordance with Condition G2 of the 2010 ISGP," and to which Rainier objected and responded "…admit as to the Spokane Street Facility. Defendant denies the Colorado Street Facility is subject to the NPDES Permit requirements." Dkt. #19-10 at 6.

In Response, Rainier points to the fact that Rainier's 2010 SWPPP contains a "Certification Form" which was signed by Daniel C. Kovacich, vice president, on July 12, 2010.  Dkt. #25-1 at 46.  Rainier argues that this satisfies the signature requirement, and it does appear to satisfy the instructions provided with the SWPPP.  *See id.*

In its Reply, Soundkeeper does not address this claim except in footnote.  This footnote states, in its entirety:

> Finally, Rainier Petroleum admitted in response to Rule 36 requests for admissions that its SWPPP was not signed and certified as the General Permit required at the time Soundkeeper filed suit. Tonry Decl., Ex. 10 at 24 (Response to Request No. 40). This fact is conclusively established and Rainer cannot dispute this admission now, particularly because Soundkeeper would be prejudiced by withdrawal since the discovery cutoff has passed. See F.R.C.P. 36(b).

Dkt. #27 at 8.

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 17

The parties argue past each other like ships in the night.   Soundkeeper cites to an Admission that Rainier failed to sign a 2014 version of the SWPPP.   Rainier does not address this Admission, instead pointing out that it did sign the 2010 version of the SWPPP. Soundkeeper replies via footnote saying "Rainier cannot dispute this admission now." Soundkeeper has the burden in this Motion, and has failed to explain why the signature of Mr. Kovacich on the 2010 SWPPP is legally insufficient.   Soundkeeper has failed to adequately explain to the Court the relevance of a 2014 version of the SWPPP, or the relevance of Rainier's distinction between the Colorado Site versus the Spokane Site.   Rainier is not required to disentangle these facts to respond to this Motion.   The Court finds issues of fact precluding summary judgment as to this claim.

**F.   Number of Violations**

As stated above, Rainier is responsible for dozens of violations of the NPDES General Permits.   Rainier contends that its violations fall into two categories, discharge violations and "administrative violations," and that "The Ninth Circuit does not administer a penalty for each day of a violation for non-discharge violations."   Dkt. #23 at 17.   In support of its contention, Rainier cites to a single unpublished case from a district Court in California, *San Francisco Baykeeper v. Tidewater Sand & Gravel Co.*, 1997 U.S. Dist. LEXIS 22602 *39 (N.D. Cal. 1997).

Rainier's summary of the CWA and Ninth Circuit law is inaccurate.   As Plaintiff points out, the CWA itself states "[a]ny person who violates… any permit condition… in a permit issued under section 1344 of this title by a State… shall be subject to a civil penalty not to exceed $25,000 per day for each violation."   33 U.S.C. §1319(d).   It seems clear that the CWA contemplates a penalty for each day of a violation for "any permit condition."   The case cited

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 18

by Rainier does not truly dispute this notion.  *San Francisco Baykeeper* states that "it makes no difference in terms of the statute whether or not ongoing violations are tallied as separate daily violations.  Regardless of how the violations are counted, the Court may take into account the duration of the violations at the penalty phase of the case."  *Id.*

The Ninth Circuit has applied a penalty for each day of a non-discharge violation in CWA cases.  *See Natural Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 1001 (9th Cir. 2000); *Borden Ranch P'ship v. United States Army Corps of Eng'rs*, 261 F.3d 810, 817-18 (9th Cir. 2001).  In *Natural Res. Def. Council v. Sw. Marine, Inc.*, the Ninth Circuit upheld a penalty assessment for each of the 799 days the defendant failed to maintain and implement an adequate SWPPP.  *See Sw. Marine, Inc.*, 236 F.3d 985, 999, 1002.  Ninth Circuit case law and the language of the statute itself are clear—each violation listed in this Order is a separate violation, and if the Court were to address penalties for these violations, it would consider the number of days these violations continued.

## IV.   CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff's Motion for Partial Summary Judgment, Dkt. #15, is GRANTED IN PART as follows:

a.   Rainier violated Condition S9.B of the 2010 General Permit by failing to complete and submit annual reports for 2013 and 2014.  Each year that Rainier failed to submit an annual report constitutes a separate violation.

b.   Rainier violated Conditions S4 and S5.A of the 2005 General Permit and Conditions S4.B and S9.A of the 2010 and 2015 General Permits by failing to sample and report stormwater discharges by:

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 19

i.   failing to collect and report a quarterly discharge sample at any of its discharge locations during fifteen of the seventeen claimed quarters within the statute of limitations period; a question of fact exists as to the 3rd Quarter of 2011 and 3rd Quarter 2012; each quarter that Rainier failed to conduct these samples properly constitutes a separate violation;

ii.  failing to collect samples and report quarterly discharges from three of its four catch basins each quarter; each quarter that Rainier failed to conduct these samples properly constitutes a separate violation.

c.   Rainier violated Condition S7 of the General Permits by failing to conduct and properly document monthly permit compliance inspections.  Each month that Rainier failed to properly conduct and document these inspections constitutes a separate violation.

d.   Rainier failed to complete Level 1 Corrective Action requirements triggered under the Condition S4.C of the 2002 General Permit and S8.B of the 2010 and 2015 General Permits for: excess zinc in the fourth quarter of 2009, excess zinc and copper in the 2nd Quarter of 2012, excess copper in the 3rd Quarter of 2013, and excess copper in the 1st Quarter of 2015.  Each instance that Rainier failed to properly complete Level 1 Corrective Action constitutes a separate violation.

e.   Rainier violated Condition S7 from the 2002 General Permit and Conditions S3.A.1-2.b and S10 from the 2010 and 2015 General Permits by discharging stormwater that contributes to violations of water quality standards, and by

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 20

failing to implement a stormwater pollution prevention plan (SWPPP) that specifies best management practices that ensures against such discharges. Each discharge constitutes a separate violation.

   f.   Rainier violated the 2010 and 2015 General Permits by failing to prepare, implement, and revise as necessary a complete and accurate stormwater pollution prevention plan (SWPPP).  Specifically, the SWPPP contains:

       i.   a deficient site map as described in this Order;

      ii.   a deficient sampling plan as described in this Order;

     iii.   a deficient employee training plan as described in this Order.

Rainier violated the General Permits for each day its stormwater pollution prevention plan has had these deficiencies.

DATED this 5 day of October 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT - 21